IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

DENNIS O'NEAL LEE                                                                                    PLAINTIFF

VS.                                                                        CIVIL ACTION NO. 3:10cv623-FKB

STEVE RUSHING                                                                                    DEFENDANTS

MEMORANDUM OPINION AND ORDER

This is an action brought by a state inmate pursuant to 42 U.S.C. § 1983. The parties have consented to jurisdiction by the undersigned. Presently before the Court is Defendant's motion for summary judgment [42]. Having considered the motion, supporting memorandum [43], Plaintiff's response memoranda [44 & 46], Defendant's rebuttal [51], Plaintiff's response to the rebuttal [61], and the admissible evidence of record,[1] the Court concludes that Defendant's motion should be granted.

In addition to the motion for summary judgment, there are three motions filed by Plaintiff since the filing of Defendant's motion for summary judgment--motions to compel discovery [56 & 65] and a motion to amend the complaint [62]–which the Court now addresses. As to the motions to compel, Plaintiff has not shown, or even argued, that he needs the discovery in order to respond to Defendant's motion for summary judgment. Furthermore, it does not appear that any of the discovery sought by Plaintiff could assist him in defeating Defendant's motion. Accordingly, the motions to compel are denied. In

---

[1] In support of their respective positions, Defendant and Plaintiff have each offered affidavits, prison records, and medical records. Many of the records offered by the parties are inadmissible in that they are not accompanied by any affidavit of a custodian or other person authenticating them and establishing them as records kept in the ordinary course of business. However, to the extent that both parties have offered and relied upon the same records, the Court has considered objections as to the admissibility of those records to have been waived.

his motion to amend, Plaintiff seeks leave to add additional defendants.  The motion is untimely, as the deadline for amendments to the pleadings was June 22, 2011.  More importantly, Plaintiff has failed to state a claim against any of the proposed defendants.  Accordingly, this motion is also denied.

The undisputed facts are as follows.  In August of 2009, Lee was arrested in Lincoln County on a parole violation.  He was held in the Lincoln County Jail (LCJ) until August 28, 2009, when he was transferred to Central Mississippi Correctional Facility (CMCF) for intake.  During intake, Plaintiff was given a haircut.  Shortly thereafter, Plaintiff began to experience itching of the scalp, hair loss, and painful bumps on his head.  In early October, Plaintiff filled out a medical request form, but on October 9, 2009, he was transferred back to LCJ prior to receiving any medical treatment.

Plaintiff's scalp condition continued to deteriorate.  Plaintiff states that for the next couple of months he "repeatedly complained" to the LCJ staff about his condition and his need for medical treatment.  However, the record contains no medical request forms prior to December 3, 2009.   On that date, and again on December 7, 2009, Plaintiff filled out requests for medical treatment.  Lori Doss, the nurse at LCJ, reviewed the requests with Dr. Lee Neal, who prescribed Nizoral, an anti-fungal shampoo. On or about December 16, 2009, Plaintiff filled out a third request form, and a prison guard sent a memo requesting that Plaintiff be seen about his scalp condition.  Dr. Neal reviewed the requests and ordered that Plaintiff be seen by a doctor or at an emergency room.

Although Ms. Doss directed a jailer on duty to have Plaintiff transported to Dr. Neal's clinic, Ms. Doss's directions were not followed.  On January 9, 2010, Plaintiff filled out another request for medical treatment, and Ms. Doss realized that Plaintiff had never

been taken to see Dr. Neal.  In response, Ms. Doss consulted with Dr. Neal, who prescribed Sulftrim, an antibiotic.  There is a conflict in the evidence as to whether Plaintiff ever received the Sulftrim.   In any event, a few days later, on January 13, 2010, prison officials transported Plaintiff to Dr. Neal's clinic for evaluation.  Dr. Neal prescribed Grifulvin, an antifungal drug; Doxycycline, an antibiotic; and Dial soap.

Three days later, a jail officer informed Plaintiff that he could not find Plaintiff's medication.  The officer concluded that it had been lost by one of the night shift officers. Plaintiff did not go long without medication, however, because on January 18, 2010, he was transported to the emergency room at King's Daughters Hospital.  The record is not entirely clear what prompted this visit, but Plaintiff says that he was taken to the emergency room after suffering an anxiety attack related to his scalp infection and losing consciousness.  At the emergency room, he was diagnosed with ringworm with a kerion and prescribed Grifulvin and Prednisone.  Plaintiff was transferred from LCJ to CMCF on February 1, 2010.  According to Plaintiff, his condition has not responded satisfactorily to treatment, and he still suffers from pain and discomfort.

Plaintiff contends that his constitutional rights were violated by LCJ officials' failure to respond to requests for medical treatment, delays in providing treatment, and the loss of his medications.  In order to succeed on a § 1983 claim for denial of adequate medical treatment, a prisoner must prove deliberate indifference to serious medical needs. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *see also Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  To establish deliberate indifference, a prisoner must show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton

3

disregard for any serious medical needs." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 725, 756 (5th Cir. 2001).

At the *Spears*[2] hearing, Plaintiff was questioned as to why Defendant, the sheriff of Lincoln County, was being sued. Plaintiff's response was Defendant was sued "because of his position" and that Rushing should be held responsible for the misconduct of his employees. Plaintiff cannot succeed on such a theory, as there is no respondeat superior liability under § 1983. *Monnell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, a plaintiff must establish that the defendant directly participated in the denial of his constitutional rights. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009). As evidence of direct participation on the part of Defendant, Plaintiff states in his affidavit that in November of 2009, Plaintiff saw the Sheriff and asked him when officials were going to "do something about his head" and whether he could get permission to marry. The only other evidence offered by Plaintiff on the issue of Rushing's knowledge or participation is the affidavit of Nikieta Lofton. Ms. Lofton states that "right before Christmas" she went to LCJ and spoke with Sheriff Rushing, telling him that Plaintiff's head had gotten worse and that the shampoo did not seem to be working. In response, Defendant told her that he was in the process of having someone come to evaluate Plaintiff's condition.

In order to show that Sheriff Rushing violated Plaintiff's constitutional right to medical care, Plaintiff must prove that Rushing acted with deliberate indifference to a substantial risk of serious medical harm. *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000). Deliberate indifference, in turn, means that Rushing was aware of facts from

---

[2]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

which an inference of a substantial risk of serious harm could be drawn, that he actually drew the inference, and that his response indicates that he subjectively intended for harm to occur. *Thompson v. Upshur County*, 245 F. 3d 447, 458-59 (5th Cir. 2001). Neither of the encounters relied upon by Plaintiff is sufficient to establish subjective deliberate indifference on the part of Defendant. There is no evidence that, at the time of Plaintiff's questions to Rushing in November, Rushing had any knowledge as to the nature of Plaintiff's condition or even what Plaintiff was referring to. As to Rushing's meeting with Lofton, this occurred only three weeks prior to Plaintiff's examination by Dr. Neal. The record contains no evidence one way or the other as to whether Defendant ever actually took any action during this time period. But even if he did not, the evidence, viewed in the light most favorable to Plaintiff, does not establish that there existed a substantial risk of serious harm to Plaintiff and that Rushing was aware of that risk.[3] The Court concludes that Plaintiff has failed to come forward with sufficient evidence to create a factual issue as to Rushing's deliberate indifference.

In response to Defendant's motion, Plaintiff raises the issue of Rushing's liability based upon the informal medical care policies in effect at the jail. Plaintiff charges that untrained, non-medical staffpersons distribute medication, that guards have too much discretion in deciding whether to forward sick call requests to medical staff, and that medical staffing is inadequate. A supervisory official can be individually liable for promulgation of a policy if that policy causes a constitutional deprivation. However, the

---

[3]In his affidavit, Defendant states that it was his understanding that Plaintiff had dandruff or ringworm, and that he did not believe, and had no reason to believe, that it was serious.

"deliberate indifference" requirement still applies under such a theory, and in order to establish liability, a plaintiff must prove that promulgation of the policy was "an intentional choice" and amounted to subjective deliberate indifference. This will usually require that the plaintiff demonstrate a pattern of violations and that the inadequacy of the policy Is "obvious and obviously likely to result in a constitutional violation." *McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). This is a "stringent standard of fault." *Id.* Plaintiff's admissible evidence on this issue consists of the affidavit of one inmate, Derrick Lewis. Mr. Lewis states that in August of 2009, he sent "a lot" of sick call requests to LCJ officials seeking treatment for a spider bite, but that he was never seen by a nurse. Lewis also states that he witnessed several other inmates request but never receive medical attention. Rather, jail officers would simply provide inmates with Benadryl or ibuprofen.

At most, Lewis's affidavit suggests that there may be inadequacies in the medical care at LCJ. However, it is insufficient to establish a pattern of violations and that the medical policy at LCJ is obviously inadequate and "obviously likely to result in a constitutional violation." For this reason, the Court concludes that there is no genuine factual issue as to Plaintiff's claims against Defendant in his individual capacity.[4]

---

[4]Plaintiff has attached to one of his memoranda [61] copies of what purport to be medical requests forms signed by other inmates at LCJ. In the requests, the inmates voice various complaints about medical care at the jail. The forms themselves are not authenticated, and the statements made by inmates in the request forms constitute hearsay. Consequently, the Court has not considered these request forms or the statements therein in ruling on the motion. Futhermore, the request forms, which cover a wide variety of circumstances and complaints, fail to create an issue as to the particular policies and practices alleged by Plaintiff, *i.e.* allowing non-medical personnel to distribute medications, the giving of too much discretion to guards in deciding whether to forward sick call requests, and inadequate medical staffing.

The Court reads Plaintiff's complaint, as clarified by his testimony at the *Spears* hearing, as raising claims against Defendant in his individual capacity only.  However, in his motion, Defendant argues that Plaintiff had asserted *only* official-capacity claims, *i.e.*, claims against the County.  *See Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985) (official capacity suit is simply a suit against the entity of which the defendant is an agent).  In response, Plaintiff has now stated that his claims are directed against Defendant in both his individual and official capacities.  In any event, it is clear that any claims against Defendant in his official capacity, *i.e.*, against the county itself, fail for essentially the same reasons that Plaintiff's supervisory liability claim fails: He has failed to show that his alleged denial of medical treatment was the result of any official custom or policy on the part of Lincoln County.

For the reasons stated herein, Defendant's motion is hereby granted, and the claims against him are dismissed with prejudice.  A separate judgment will be entered.

So ordered and adjudged, this the 22nd day of February, 2012.

/s/ F. Keith Ball

UNITED STATES MAGISTRATE JUDGE